# H. Norton Strong v. Jeremiah Saunders.

*Assumpsit: Competency of evidence. Power of master to bind vessel.* The plaintiff below had for some years kept a set of range lights and stakes on the St. Clair flats, to aid vessels in navigating the channel, and relied upon such compensation as he could obtain from vessel owners.

In a suit against defendant for the value of such services rendered to his tug boat, evidence was offered tending to show that the lights were of great benefit to navigation, and that without them it was dangerous for vessels to pass the channel at that point at night; that defendant was the owner of steam tugs engaged in towing vessels through said channel; that defendant had paid $25 for the use of said lights for the season of 1863, and that on being called upon by plaintiff for the payment of the use of said lights for the season of 1864 replied that he would pay what his captain certified was right; that the plaintiff's bill of $40 for said services was certified to as correct, and that the captain of his tug boat had subscribed as master, to pay the sum of $40 for said season of 1864. *Held*, that the testimony relating to the payment by defendant of $25 was competent as it tended, in connection with the other evidence, to show that defendant had been fully informed as to the nature of plaintiff's services, and that he acknowledged their value, and a willingness to pay for them.

*Held*, further that it was a question for the jury whether from the evidence a promise to pay could be implied, and that, as the services had already been performed, the plaintiff would be entitled to recover if the jury should find a promise to pay, either expressed or implied.

*Held*, further that the power to bind the owner for such expenses did not come within the ordinary general powers incident to the employment as master, and that, therefore, the said subscription was not binding upon the owner.

*Heard April 23d. Decided April 30th.*

Error to Wayne Circuit.

This was an action of assumpsit brought to obtain compensation for the use of certain range lights placed on the St. Clair flats by defendant in error to aid vessels in navigating the channel.

The declaration was on the common counts.

Defendant plead the general issue.

The facts, together with the exceptions taken to the rulings of the court below, are stated in the opinion.

Judgment was rendered for plaintiff in the court below, and the case comes up for review as to the correctness of the rulings.

STRONG v. SAUNDERS.

*Newberry* and *Pond*, for plaintiff in error.

1. The first and second assignments of error can be considered together as they relate to the admission of testimony of the same nature, to wit: Testimony tending to show that the defendant paid plaintiff for the use of said range lights, by the tug "Bob Anderson," in the year 1863.

This testimony was clearly irrelevant. The fact that defendant paid for the use of these range lights in the year 1863, by the "Bob Anderson," would not justify the inference that he promised to pay for the use of them for the "I. U. Masters" in 1864.

2. The fourth and sixth assignments of error may also be considered together.

The fourth is based upon the refusal of court to instruct the jury that under the facts no promise by Strong to pay for the use of said range lights could be implied. And the sixth, upon the instruction given, that it was for the jury to determine from the evidence whether there was any promise, express or implied.

We think it clear that the court erred in refusing to give the instruction asked; but whether this be so or not, the instruction given was clearly erroneous.

*a.* An "implied promise," is a promise created by the law from a given state of facts; and hence, the facts being conceded, the question whether or not the law created a promise, is pure question of law.

And we insist that the facts as claimed by plaintiff were not such that the law would create from them an implied promise by Strong to pay for the use of said range lights; and hence that the instruction asked should have been given.

*b.* The instruction given left it to the jury, first, to determine the facts, and second, whether from the facts, as they should find them, the law would create an implied promise by Strong.

This was clearly erroneous.

STRONG v. SAUNDERS.

3. The question involved in the consideration of the seventh and eighth assignments of error, is whether the subscription for the use of said lights signed by "W. H. Littleton, Master of tug I. U. Masters," was binding upon defendant, as a contract made by him through his agent.

We submit that it was not so binding. Defendant's name no where appears upon it, and the promise is by Littleton. The words "Master Tug I. U. Masters" after his name, are to be taken only as *descriptio personœ.*— 1 *Amer. Lead. Cases,* (4 *Ed.,*) 623; 1 *Pars. on Cont.* 48, *Note A.;* 11 *Mass.* 27; 8 *Met.* 456; 9 *N. H.* 263; 3 *Wend.* 94; 10 *Id.* 271; 5 *Sandf.* 101; 4 *N. Y.* 208; 9 *Id.* 571.

4. The master of a vessel, as such, undoubtedly has authority to bind her owner, or owners, by any agreement necessary and proper to be made in regard to such vessel, in and about her usual and ordinary course of business. But, we insist that an agreement to pay for keeping up said range lights was not such an agreement any more than would be an agreement to pay a certain sum towards building or sustaining a light house.— 1 *Pars. Merc. L.* 383.

We submit that the judgment below should be reversed.

*Moore* and *Griffin,* for defendant in error.

1. If Strong paid for the use of the lights in 1863, and availed himself of the benefit of them in 1864, knowing that Saunders expected compensation for such use, and without notice to Saunders that he should not pay, the law raises an implied assumpsit on the part of Strong to pay for the benefit he derived from the lights in 1864.

If Strong acknowledged the benefit of the lights in 1863 by paying for them, from this the law infers or deduces that he intended to pay for them in 1864, if he used them.—*Story on Cont.* § 11 *et seq.;* 1 *Pars. on Cont.* 4; 2 *Greenl. on Ev.* §§ 107, 108.

It was competent to introduce in evidence the bill against the tug certified to by the master, W. H. Littleton, as there was evidence before the jury of an express promise on the part of Strong on condition that such certificate should be produced.

It was also proper evidence to show that the amount charged by Saunders were the figures which Littleton, as master, made for the use of the lights for tug I. U. Masters during the season of 1864.

The fourth, fifth and sixth assignments of error relate to the charge of the court, and may be considered together.

There is certainly evidence, if believed by the jury, which justifies them in finding an implied promise.

There is also evidence, if believed by the jury, that justifies them in finding that keeping the range lights was beneficial to plaintiff in error, and if they so found, it was a sufficient consideration to support an express promise.— 2 *Greenl. on Ev.* § 107, *above cited.*

The second and third requests were properly refused.

The defendant in error was entitled to a stronger charge than the one alleged as error in the sixth assignment. He was entitled to the charge that if the jury believed the testimony of the witnesses of defendant in error, they must find both an express, and an implied promise.

The jury must have believed this evidence, to have found their verdict, and as, therefore, no injury resulted to the plaintiff in error, this court will not reverse the judgment, even if the charge were not technically correct.

2. The general rule as to the authority of the master is: That owners of vessels are bound by contracts of the master, relative to the usual course of ships's employment. *Abbott on Shipping, pp.* 164–167; 3 *Kent,* (*last ed.,*) 220, *et seq. and notes; Conk. Adm.* 74, 75; *Ware's Rep.* 194.

These authorities indicate and decide that whatever contracts relate to the employment or navigation of the

vessel or to supplies, repairs or necessaries, furnished to her are binding upon the owner, though made by the master.

The evidence in this case discloses facts which bring the contract made by Littleton within the rule.

CHRISTIANCY J.

The plaintiff below had for some years kept a set of range lights and stakes on the St. Clair Flats, to aid vessels in navigating the channel at night, for which he received no pay from government, but relied upon such compensation as he was able to obtain from the owners of vessels navigating the channel, and others interested in the navigation.

All the evidence tended to show that the lights were a great benefit to the navigation, and that without them it was imprudent and dangerous for vessels, and especially for tugs, towing vessels, to pass the channel across the flats at night.  Defendant below was the owner of certain steam tugs engaged in towing vessels between lakes Erie and Huron, which had to pass this channel.

The evidence tended to show that defendant, in the spring of 1864, being called upon by plaintiff for pay for the use of these lights by his steam tug Bob Anderson, for the season of 1863, professed to be ignorant of the nature and value of the services, and upon inquiry of his captain of the tug, and learning the facts, had paid the twenty-five dollars claimed by the plaintiff, which the captain assured him was reasonable.  The defendant, in speaking of the use of the lights, always carried the idea that whatever was right to pay the plaintiff he would pay, but declared he would not pay any bill until certified by the captain — that defendant said he wished his captains to make figures as to what he should pay for such services. And though the defendant had refused to subscribe in advance for such services to be rendered, there was evidence tending to show that his answer to such application

was that his masters would fix the figures, and that he would pay the amount they fixed or certified.

This suit was brought to obtain compensation for the use of these lights by defendant's steam tug "I. U. Masters," for the season of navigation of 1864. Plaintiff declared only upon the common counts, and claimed forty dollars as a reasonable compensation for the use of the lights by a tug of the size of that in question, and plaintiff's bill for this amount was certified by the captain of the tug as correct.

The captain had also, about the last of October or fore part of November, signed a subscription as master, promising to pay forty dollars for the use of said range lights, by that tug, for the season of navigation of 1864.

The first two exceptions were to the admission of evidence tending to show that defendant had, in the spring of 1864, paid the plaintiff for the use of these lights by his tug "Bob Anderson," for the previous year.

We see no error in the admission of this evidence. It tended, in connection with the other evidence, to show that the plaintiff had been, in the spring of 1864, fully informed of the nature of the plaintiff's services, and that he recognized them as valuable to him, and as the services for the season of 1864, for which the suit was brought, were of the same nature, it tended, in connection with the other evidence, to show a willingness on his part to pay for such services in future — in other words, a promise to pay for such future services.

The third and fifth assignments of error were very properly abandoned on the argument, and need not be noticed.

The fourth assignment of error is the refusal of the court to charge that, under the facts disclosed in the evidence, no promise to pay for the benefit derived from the range lights could be implied, and the sixth, the charge given upon this point, that it was for the jury to determine

whether there was any promise on the part of the defendant, express or implied. There was evidence strongly tending to show an express promise to pay such sum as the defendant's captain should certify to be fair and reasonable; and there was also evidence tending to show an implied promise, or, in other words, a clear duty on the part of the defendant, to pay a reasonable compensation; and, although this evidence was contradicted by that of the defendant, still it was a question for the jury upon the evidence, and it would have been clearly erroneous for the court to have taken the question from the jury and assumed to decide it himself, in accordance with the request. As the services had already been performed, the plaintiff would be entitled to recover if the jury should find an express promise, or such a state of facts as would create an implied promise.

But the court was requested to charge that Captain Littleton's employment as master of the tug " I. U. Masters," gave him no authority to bind the defendant by an agreement to pay the plaintiff for the use of said range lights, and that his subscription of forty dollars for that purpose did not bind the defendant. This request was refused, and the court charged directly the reverse — that if the use of the range lights was necessary and proper, the subscription was binding. This refusal and charge, we think, were erroneous. Had the tug been sailing in a foreign country, or at a great distance from the home port, where the master could not communicate with the owner in time to meet the emergency; or, had the subscription been only for the use of the lights for one or two passages of the tug over the flats, and it had become necessary to agree upon the sum before he could consult the owner, we are not disposed to deny — though we do not decide — that for such special emergency, he might have had power to bind the owner. But the power to bind the owner for such expenses can not be treated as one

15 Mich. — x.

of the ordinary general powers incident to his employment as master, like that of contracting for freight, signing a bill of lading or the purchase of customary supplies. The power here in question can be recognized only as springing from, and therefore, limited by, the necessity of the case. Here could have been no such necessity. For admitting that the tug could not have had the use of the lights without immediate payment or the master's subscription (though the contrary clearly appeared by the evidence), still as the tug was engaged in towing vessels between Lakes Huron and Erie, and must, in the ordinary course of business, frequently pass Detroit, the home port where the owner resided, the master must have had frequent opportunities of conferring with the owner, and the flats where the lights were kept were about thirty miles from Detroit, where he might communicate daily with the owner by mail.

For the error of the court below upon this point, the judgment must be reversed, with costs, and a new trial awarded.

The other Justices concurred.